B.   LICENSEE shall have the right to terminate this Agreement at any time on thirty (30) days written notice to LICENSOR. In such event, all moneys paid to LICENSOR shall be deemed non-refundable and LICENSEE's obligation to pay any unpaid royalties shall be accelerated and shall become immediately due and payable.

C.   Additionally, if, after five years of the initial intellectual property license, there are three consecutive years during which royalty payments to LICENSOR are less than one hundred thousand dollars ($100,000.00), LICENSOR has the option to cancel this Agreement in accordance with Section IX. TERMINATION, Para. A.

## X. POST TERMINATION RIGHTS

A.   Not less than thirty (30) days prior to the expiration of this Agreement or immediately upon termination thereof, LICENSEE shall provide LICENSOR with a complete schedule of all inventory of Licensed Products then on hand or on order (the "Inventory").

B.   Upon expiration or termination of this Agreement, LICENSEE shall be entitled, for an additional period of six (6) months, to continue to sell such Inventory. Such sales shall be made subject to all of the provisions of this Agreement and to an accounting for and the payment of a Royalty thereon. Such accounting and payment shall be due and paid within thirty (30) days of the quarterly calendar cited as the period basis for royalty calculation. LICENSEE shall have the right to continue the use of the name(s) associate with the products and articles that encompass this Agreement for so long as LICENSEE is actively selling its inventory of articles and products. At the conclusion of LICENSEE'S efforts in this regard, LICENSEE agrees to discontinue the use of names, trademarks, signs, advertising and anything else that might make it appear that the LICENSEE is still handling the articles and products of LICENSOR.

C.   Upon the expiration or termination of this Agreement, all of the license rights of LICENSEE under this Agreement shall forthwith terminate and immediately revert to LICENSOR and LICENSEE, except as detailed above in Section (B) of the "Post Termination Rights" Section, shall immediately discontinue all use of the Licensed Property and the like, at no cost whatsoever to LICENSOR.

D.   Upon termination of this Agreement for any reason whatsoever, LICENSEE agrees to immediately return to LICENSOR all material relating to the Licensed Intellectual Property. Furthermore, upon termination or expiration of this Agreement, LICENSEE agrees to immediately inform all of it's sub licensees regarding the said termination or expiration of this Agreement.

## XI. INFRINGEMENTS

A.   During the Term of this Agreement and any and all option/renewal periods, LICENSEE shall have the sole right, in its discretion and at its expense, to take any and all actions against third persons to protect the Intellectual Property Rights licensed in this Agreement.

B.   Upon request by either party to the other, the other party shall execute all papers, testify on all matters, and otherwise cooperate in every way necessary and desirable for the prosecution of any such lawsuit. Each party shall reimburse the other party for the expenses incurred as a result of such cooperation.

## XII. INDEMNITY

A.   LICENSEE agrees to indemnify and hold harmless LICENSOR, its agents, heirs, assigns and representatives, against all costs, expenses and losses (including reasonable attorneys' fees and costs) incurred through claims of third parties against LICENSOR based on product liability but excluding any claims based solely upon the use of the Licensed Intellectual Property or Licensed Trademarks by LICENSEE in accordance with the terms of this Agreement.

6



B. LICENSOR agrees to indemnify and hold harmless LICENSEE, its officers, directors, agents and employees, against all costs, expenses and losses (including reasonable attorneys' fees and costs) incurred through claims of third parties against LICENSEE based on or arising from (i) any infringement, misappropriation or other related action involving the Licensed Intellectual Property or Licensed Trademarks; or (ii) any breach of LICENSOR's obligations, representations, warranties or duties under this agreement.

C. With respect to any claims falling within the scope of the foregoing indemnifications: (i) each party agrees promptly to notify the other of and keep the other fully advised with respect to such claims and the progress of any suits in which the other party is not participating; (ii) each party shall have the right to assume, at its sole expense, the defense of a claim or suit made or filed against the other party; (iii) each party shall have the right to participate, at its sole expense, in any suit instituted against it; and (iv) a party assuming the defense of a claim or suit against the other party shall not settle such claim or suit without the prior written approval of the other party, which approval shall not be unreasonably withheld or delayed.

## XIII. LIMITATION OF LIABILITY

A. IN NO EVENT WILL EITHER PARTY BE LIABLE UNDER THIS AGREEMENT FOR ANY INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL OR PUNITIVE DAMAGES IN CONNECTION WITH OR ARISING OUT OF THIS AGREEMENT (INCLUDING LOSS OF PROFITS, USE, DATA, OR OTHER ECONOMIC ADVANTAGE), NO MATTER WHAT THEORY OF LIABILITY, EVEN IF THE EXCLUSIVE REMEDIES PROVIDED FOR IN THIS AGREEMENT FAIL OF THEIR ESSENTIAL PURPOSE AND EVEN IF EITHER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OR PROBABILITY OF SUCH DAMAGES. THE PROVISIONS OF THIS SECTION "LIMITATION OF LIABILITY" ALLOCATE THE RISKS UNDER THIS AGREEMENT BETWEEN LICENSOR AND LICENSEE AND THE PARTIES HAVE RELIED UPON THE LIMITATIONS SET FORTH HEREIN IN DETERMINING WHETHER TO ENTER INTO THIS AGREEMENT.

B. EACH PARTY'S LIABILITY TO THE OTHER UNDER THIS AGREEMENT FOR CLAIMS RELATING TO THIS AGREEMENT, WHETHER FOR BREACH OF CONTRACT OR IN TORT, SHALL BE LIMITED TO THE AGGREGATE ROYALTY FEES PAID BY LICENSEE TO LICENSOR DURING THE TWELVE MONTH PERIOD PRECEDING THE CLAIM.

## XIV. INSURANCE

LICENSEE shall, throughout the Term of this Agreement, obtain and maintain at its own cost and expense from a qualified insurance company licensed to do business as required by state and federal law(s), standard Product Liability Insurance naming LICENSOR as an additionally named insured. Such policy shall provide protection against any and all claims, demands and causes of action arising out of any defects or failure to perform, alleged or otherwise, of the Licensed Products or any material used in connection therewith or any use thereof. The amount of coverage shall be as specified in "Schedule A" attached hereto. LICENSEE agrees to furnish LICENSOR a certificate of insurance evidencing same within ninety (90) days after issuance of same, and, in no event, shall LICENSEE manufacture, distribute or sell the Licensed Products prior to receipt by LICENSOR of such evidence of insurance.

## XV. FORCE MAJEURE

LICENSEE shall not be liable for any failure of performance hereunder due to causes beyond its reasonable control, including but not limited to acts of God, fire, explosion, vandalism, strikes, lockouts, work stoppages, other labor difficulties, supplier failures, storm or other similar catastrophes, any law, order, regulation, direction, action or request of the state, local or federal government or of any government agency, commission, court, bureau, corporation or other instrumentality of any one or more of such governments; or of any civil or military authority, national emergencies, insurrections, riots, or wars.

## XVI. JURISDICTION AND DISPUTES

A. This Agreement shall be governed in accordance with the laws of the State of Florida without regard to its principles of conflicts of laws.

B. All disputes under this Agreement shall be resolved by the courts of the State of Florida including the United States District Court for Florida and the parties all consent to the jurisdiction of such courts, agree to accept service of process by mail, and hereby waive any jurisdictional or venue defenses otherwise available to it.

## XVII. AGREEMENT BINDING ON SUCCESSORS

The provisions of the Agreement shall be binding upon and shall inure to the benefit of the parties hereto, their heirs, administrators, successors and assigns.

## XVIII. WAIVER

No waiver by either party of any default shall be deemed as a waiver of prior or subsequent default of the same or other provisions of this Agreement.

## XIX. SEVERABILITY

If any term, clause or provision hereof is held invalid or unenforceable by a court of competent jurisdiction, such invalidity shall not affect the validity or operation of any other term, clause or provision and such invalid term, clause or provision shall be deemed to be severed from the Agreement.

## XX. NO JOINT VENTURE

Nothing contained herein shall constitute this arrangement to be employment, a joint venture or a partnership.

## XXI. ASSIGNABILITY

Neither party may assign by any act or operation of law the rights and obligations of this Agreement unless in connection with a transfer of substantially all of the assets of LICENSEE and/or with the consent of LICENSOR, which shall not be unreasonably withheld or delayed. By way of example and not limitation, LICENSEE may freely assign its rights and obligations under this Agreement to Stelor Productions, Inc.

## XXII. INTEGRATION

This Agreement constitutes the entire understanding of the parties, and revokes and supersedes all prior agreements between the parties, including any option agreements which may have been entered into between the parties, and is intended as a final expression of their Agreement. It shall not be modified or amended except in writing signed by the parties hereto and specifically referring to this Agreement. This Agreement shall take precedence over any other documents which may be in conflict with said Agreement.

## XXIII. RATIFICATION

The LICENSOR hereby agrees to the transfer of this License from the LICENSEE (The Aurora Collection, Inc.) to Stelor Productions, Inc. as contemplated by the Asset & Purchase Agreement, dated May 1st, 2002, and executed between the above mentioned parties



IN WITNESS WHEREOF, the parties hereto, intending to be legally bound hereby, have each caused to be affixed hereto its or his/her hand and seal the day indicated.

| STEVEN A. SILVERS | STELOR PRODUCTIONS, INC. |
|---|---|
| *(signed)* Steve A. Silvers | By: *(signed)* |
| Steven A. Silvers | Printed Name: Steven A Esrig |
| Title: Owner/LICENSOR | Title: President |
| Dated: 5/09/02 | Dated: 5/9/02 |

Received Ten Thousand Dollar signing bonus ($10,000.00) *(signed)* Steve A. Silvers

*(signed)*

MICHAEL LUM
NOTARY PUBLIC STATE OF MARYLAND
My Commission Expires April 1, 2003

5/9/02



## "SCHEDULE A"

### LICENSED INTELLECTUAL PROPERTY

The following Licensed Intellectual Property forms part of this Agreement: A License under any and all intellectual property rights and interests therein, including by way of explanation, products which deal with a creative character known as Googles, anything that contains the letters GOO (in upper or lower case), together with any and all products, which comprise and which will comprise those characters, likenesses, which include Iggle, Oogle, Oggle, Gooroo, Gootian(s), the Planet Goo, slides, computer web site(s), membership lists, clubs, materials, patterns, prototypes, logos, trademarks, service marks, clothing, merchandise, educational products, marketing and promotional data and tools, packaging and advertising, modifications, updates and variations, and all other items associated therewith whether in singular or plural

### LICENSED TRADEMARKS

The following Licensed Trademarks form part of this Agreement: (i) "The Googles" (word and design) Trademarks in International Class Code (016) of the U.S.P.T.O. and the co-existent Trademarks Agreement with Ganz, Inc. of Canada in International Class Code (028) of the U.S.P.T.O., which is hereto attached and made a part of this "Schedule A" document, (ii) "Oogle", (iii) "Iggle", (iv) "Oggle", (v) "GooRoo", (vi) "Planet Goo", (vii) "GooMu", (viii) "GooToons", (ix) "GooStuff", (x) "GooKids", (xi) "GooStore" and (xii) any other trademarks, whether registered, pending or future or common law, used in connection with the Licensed Property, including, but not limited to, any trademark incorporating the phrase "Goo" currently in existence.

### LICENSED PRODUCTS

The following Licensed Products form part of this Agreement: all products which comprise the likenesses, stories, ideas, concepts, or designs of the Licensed Property, including without limitation, stuffed toy figurines, videos, stickers, t-shirts or other clothing items, slides, movies, cartoons, books (comic and otherwise), posters, playing, trading and collector cards, CDs, cassette tapes, DVDs, TV programs, motion pictures, all other forms of communication and publication, programs, computer Web site(s), membership lists and clubs, and any other products.

### DERIVATIVES

A Derivative as defined in this agreement shall mean a product or service that is utilized by the LICENSEE and developed by a party other than the LICENSOR but is used in conjunction with licensed products, articles and/or services. It can be a product or service produced by the LICENSEE or a third party (inventor, sub licensee etc,) that in its use enhances the value of the Googles Universe but does not have a conflict with an already existing Googles product idea or concept as outlined in this agreement. It may not possess the "Googles" or "GOO" in it's name and would therefore fall under the LICENSOR'S exclusive ownership as defined in the amended agreement but can be used in conjunction with the "Goo" Universe by the LICENSEE.

### TERRITORY

The following countries shall constitute the Territory: Global/Worldwide rights.

### TERM

This Agreement shall commence on the date executed below by both parties and shall be for a thirty (30) year term. This Agreement shall automatically renew for one additional ten (10) year term on the same terms and conditions provided for herein ("Renewal Term"). Upon expiration of the first Renewal Term of ten (10) years, this Agreement shall automatically renew for a second ten (10) year extended Term on the



same terms and conditions provided for herein, unless LICENSOR provides written notice of its intention to not to renew this Agreement within one hundred eighty (180) days prior to expiration of the Renewal Term.

## ROYALTY RATE

LICENSEE shall pay the following royalty rates: (i) SIX PERCENT (6%) of Net Sales of Licensed Products that are based solely on the Licensed Intellectual Property and (ii) THREE PERCENT (3%) of Net Sales of Licensed Products that are based solely on Derivative Products and (iii) In the case of Sub Licenses royalties will be TEN PERCENT (10%) of Net sales after subtracting licensing costs and royalties paid to third parties only.

## PRODUCT LIABILITY INSURANCE

Minimum Product Liability Insurance shall be Two Million U.S. dollars ($2,000,000.00) combined single limit for each single occurrence for bodily injury and/or for property damage.

*[handwritten:]*

Succession
Rights of Survivor

In the event of the Death of Licensor all of the Licensors rights under this agreement shall go to his heirs, assigns or legal representatives as he has lawfully designated in writing.

*[signatures]* 5/09/02    5/9/02

MICHAEL LUM
NOTARY PUBLIC STATE OF MARYLAND
My Commission Expires April 1, 2003
5/9/02