STELOR PRODUCTIONS, INC. v. OOGLES N GOOGLES et al  Doc. 78 Att. 8

FROM : SILVERS ENT          FAX NO. : 5617849959          Jan. 17 2005 12:09PM P3
Case 9:05-cv-80387-KLR   Document 1   Entered on FLSD Docket 05/05/2005   Page 244 of 348

## LICENSE, DISTRIBUTION AND MANUFACTURING AGREEMENT

THIS LICENSE, DISTRIBUTION AND MANUFACTURING AGREEMENT ( hereinafter the "Agreement"), is made this 21 day of July, 2000, by and between STEVEN A. SILVERS, an individual whose principal business address is 3741 NE 163rd St., North Miami Beach, Florida 33160, (hereinafter referred to as " LICENSOR") and THE AURORA COLLECTION, INC., a corporation whose principal business address is 4651 SW 51st St., Davie, Florida, 33314 (hereinafter referred to as" LICENSEE"). Said addresses shall be used for notices between the parties of an official or legal nature.

### RECITALS

LICENSOR is the sole owner, creator, developer, author and artist of a product line and concept which includes all intellectual property rights and all other rights to the Googles family and products, as further defined hereafter.

LICENSOR desires to engage LICENSEE in the manufacture, marketing, distribution, and commercial expansion of the Googles family and products.

LICENSEE desires to acquire the exclusive right to manufacture, market, distribute and expand the product line known as the Googles family and products, both as to existing designs, concepts and products, as well as future designs, concepts and products, under the terms and conditions set forth herein.

LICENSOR desires to grant LICENSEE the rights referred to above, under the terms and conditions set forth herein.

THEREFORE, in consideration of the premises and of the mutual covenants herein and for other good and valuable consideration, the parties agree as follows:

### TERMS AND CONDITIONS

1. **Recitals.** The recitals stated above are hereby made a part of and are incorporated into the Agreement.

2. **Definitions.** As used in the Agreement, the terms "Licensed Articles" and "Licensed Products" shall mean that which is contained in ' (a)'. "Gross sales price" is defined

Page 1 of 6

in ' (b)'. " Net profit(s)" is defined in ' (c)'. "Gross receipts" is defined in ' (d)'.

(a)　The products which deal with a creative character known as Googles, together with any and all other products which comprise and which will comprise those characters, likenesses, stories, ideas, concepts, designs, Googles spin offs and family members, which include Iggle, Oogle, Oggle, Gooroo, Gootian(s), the planet Goo, slides, movies, cartoons, books (comic and otherwise), posters, playing, trading and collector cards, CDs and tapes, DVDs and all other forms of communication and publication, programs, computer web site(s), membership lists, clubs, materials, patterns, prototypes, logos, trademarks, servicemarks, clothing, merchandise, educational products, marketing and promotional data and tools, packaging and advertising, modifications, updates, and variations, and all other items associated therewith, whether in the singular or plural.

(b)　The term "gross sales price" shall mean the price charged by LICENSEE to its customers, but shall not include any sales or other taxes, nor shall it include any shipping and handling charges.

(c)　The term "net profit(s)" shall mean that amount of money left after the deduction of expenses of LICENSEE for the manufacture, marketing and sale of those Licensed Articles that are subject to distribution/division of net profits..

(d)　The term "gross receipts" shall mean money received by LICENSEE for the sale of licensed articles and products, but shall not include taxes, shipping and handling charges.

## LICENSE

3.　The Grant.　LICENSOR hereby grants to LICENSEE and LICENSEE hereby accepts from LICENSOR, upon the terms and conditions set forth herein, the sole and exclusive right and license to manufacture, market, distribute, sell, use and otherwise commercialize, licensed products and articles. LICENSEE shall have the right to grant sub-licenses without the prior consent of LICENSOR, so long as all sub-licensees operate in the spirit and intent of providing wholesome, non-violent entertainment and education. So long as LICENSEE is in compliance with the terms of this Agreement, LICENSEE shall have the right to continue to exercise all rights granted by this license.

4.　Best Efforts.　LICENSEE will use its best efforts to engage in the commercial venture whose end goal is the ethical marketing and sale of licensed articles, however, nothing herein shall obligate LICENSEE to meet

any particular quota, schedule, time table, volume requirement or monetary minimums. If, in the sole opinion of LICENSEE, LICENSEE desires to abandon this LICENSE and all rights hereunder, LICENSEE shall be free to do so. During the term of its license, LICENSEE will assume the costs of production, marketing and sale of those items that it chooses to market, as well as the fees and costs of obtaining, defending and/or protecting any patent and trademark rights to such items. Best efforts means the active promotion and marketing of said products.

5. <u>LICENSOR Representations.</u>  LICENSOR represents, and LICENSEE has relied on the fact and assertion, that LICENSOR is the creator and owner, with all rights of ownership, of the Googles family and products and licensed articles and has the sole right, title, interest and authority to grant this license. LICENSOR further represents that he knows of no claims, notices, suits, threatened or otherwise, which would in any way limit or impede his right to grant this license, other than those attached hereto as Exhibit A. LICENSOR represents that there are no brokers or agents involved in this matter and that LICENSOR alone is entitled to any remuneration herein. LICENSOR agrees to hold harmless and indemnify LICENSEE for all costs, fees and charges should claims or suits be brought against LICENSEE which allege that LICENSOR did not possess the right, title and interest in those licensed articles that were in existence at the time of, and which formed a great part of the consideration for, this transaction.

6. <u>Retained Ownership Interest.</u>  LICENSOR retains sole creative ownership rights to licensed articles which predate this Agreement and shall have final approval rights for all additions and changes in the future.

## ROYALTIES AND PAYMENTS

7. <u>Consideration.</u>  Fees, stock and royalties paid under this agreement shall be in consideration for the sum total of all rights conferred by LICENSOR to LICENSEE.

8. <u>License Issuance Fee.</u>  Upon execution of this Agreement, LICENSEE shall pay LICENSOR a license issuance fee in the amount of Ten Thousand Dollars ( $10,000.00 ).

9. <u>License Issuance Stock.</u>  Upon execution of this Agreement, LICENSEE

## TERMINATION RIGHTS AND METHODS

15. **Cause Not Needed.** LICENSEE reserves the right to cancel this Agreement, if in its sole business judgment, the Agreement is no longer in the best interests of the company. LICENSEE shall have the right to sell its existing inventory and those items that cannot be canceled without financial penalty, but shall not cause additional items to be manufactured thereafter. In the event of termination, LICENSOR shall be given all original material that he provided to LICENSEE.

16. **Use of Name After Termination.** In the event of termination, LICENSEE shall have the right to continue to use the name(s) associated with the products and articles that encompass this Agreement for so long as LICENSEE is actively selling its inventory of articles and products. At the conclusion of LICENSEE'S efforts in this regard, LICENSEE agrees to discontinue the use of names, trademarks, signs, advertising and anything else that might make it appear that the LICENSEE is still handling the articles and products of LICENSOR.

## ADDITIONAL PROVISIONS

17. **Authorization.** LICENSOR and LICENSEE represent and warrant that the consummation of this Agreement has been duly authorized by all requisite corporate and personal action and this Agreement is enforceable against the parties in accordance with its terms. Both parties represent and warrant that the making and performance of this Agreement will not violate any agreement or understanding to which they are a party or to which they are bound.

18. **Assignment.** LICENSEE shall not have the right to sell, transfer or assign, in whole, or in part, its rights under this Agreement, without the written consent of LICENSOR, which consent shall not be unreasonably withheld if the proposed buyer, transferee or assignee is willing and able to carry out the goals and mission of the Googles project to ethically market non-violent entertainment and educational products to the public. Furthermore, such sale, transfer or assignment shall include a provision that permits LICENSOR, at his option, to become employed by the new entity for a period of six months, or if not employed, to become a paid consultant for six months for a fee which equals his last salary when employed by LICENSEE.

19. **Waiver.** No waiver of any breach of any provision of this Agreement shall constitute a waiver of any other breach of the same or any other provision hereof, and no waiver shall be effective unless made in writing and signed by the parties hereto.

20. **Interpretation.** This Agreement and performances hereunder shall be interpreted and governed by the laws of the State of Florida. No provision shall be interpreted against any party because that party or their legal representative drafted, modified or recommended inclusion of, such provision. Venue for any legal action, whether equitable or otherwise, shall be in Broward County, Florida.

21. **Entire Agreement.** This Agreement constitutes the entire Agreement between the parties and no warranties, representations or understandings which may have been made by either party shall be enforceable unless specifically expressed herein. Any amendment, alteration or modification of this Agreement will be enforceable only if it is signed by both of the parties.

22. **Binding Effect.** This Agreement shall inure to the benefit and be binding upon the parties, their heirs, legal representatives, successors and assigns.

23. **Severability.** If any provision or sub-provision of this Agreement is declared invalid or void by a court of competent jurisdiction, the remainder of the Agreement shall nevertheless remain in full force and effect.

24. **Counterparts.** This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original. Each shall constitute one and the same Agreement.

25. **Paragraph Headings.** Paragraph headings and titles contained herein are inserted as a matter of convenience and reference only and shall not be used in construing the meaning of, or enforcing any of the provisions of, this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement by their duly authorized signatures the day and year first written above.

AS TO LICENSOR:     _____
                    STEVEN A. SILVERS

AS TO LICENSEE:     _____
                    MYLES W. FARRINGTON, as
                    President of The Aurora Collection, Inc.